Filed 10/28/22  In re L.L. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re L.L., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D080525 |
| Plaintiff and Respondent, | (Super. Ct. No. EJ4595) |
| v. | |
| M.L., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Gary M. Bubis, Judge.  Conditionally reversed and remanded with directions.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia Silva, County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Eliza Molk, Deputy County Counsel, for Plaintiff and Respondent.

M.L. (Mother) appeals a juvenile court's order terminating Mother's parental rights to her infant daughter, L.L., under Welfare and Institutions Code[1] section 366.26. The sole issue on appeal is whether the San Diego County Health and Human Services Agency (Agency) and the juvenile court failed to conduct an adequate initial inquiry into L.L.'s possible Native American ancestry, as required by the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.). The Agency concedes error but argues that the error is harmless. We accept the concession but disagree that the error is harmless. Rather, applying the prejudicial error approach adopted in *In re Benjamin M.* (2021) 70 Cal.App.5th 735 (*Benjamin M.*), we conclude that the error is prejudicial. We therefore conditionally reverse the juvenile court's section 366.26 order and remand for the limited purpose of ICWA compliance.

FACTUAL AND PROCEDURAL BACKGROUND[2]

In January 2021, the Agency petitioned the juvenile court under section 300, subdivision (b)(1) on behalf of L.L., alleging that L.L. had suffered and was at substantial risk of suffering serious physical harm due to Mother's ongoing substance abuse. The Agency attached to its petition an ICWA-010(A) form stating that the Agency had conducted an ICWA inquiry with Mother and that Mother had given no reason to believe that L.L. was or might be an Indian child.

The Agency's detention report stated that Mother denied having any Native American ancestry during a January 7, 2020 interview. The detention report also reflected that the Agency spoke with maternal

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

[2] Because Mother's only contention on appeal concerns the alleged ICWA violation, we limit our factual background accordingly.

grandmother, maternal aunt, and maternal uncle, all of whom expressed interest in placement of L.L. There is no indication in the record on appeal that the Agency ever asked any of these relatives about L.L.'s possible Native American ancestry.

At the detention hearing, Mother's counsel informed the court that Mother had no known Native American ancestry. The juvenile court deferred ruling on ICWA in order to provide the Agency time to search for L.L.'s alleged father, A.C.[3]

The Agency's jurisdiction/disposition report indicated that, a few weeks after the detention hearing, Mother denied that she or anyone in her family had Native American ancestry. The report also outlined the Agency's efforts to reach both the presumed mother and A.C. In addition, the Agency mailed relative identification letters to 17 individuals whom the Agency identified as "potential" relatives. The 17 individuals included relatives of both presumed mother and A.C, two previously contacted maternal relatives (maternal grandmother and maternal uncle), and seven additional relatives who share

---

[3] During the dependency proceedings, Mother identified a presumed mother—who was Mother's legal wife, but from whom Mother had separated prior to her pregnancy with L.L.—and three alleged fathers. On appeal, Mother does not claim that the presumed mother or any of the alleged fathers qualify as L.L.'s parent or extended family member under ICWA. Moreover, as we have previously held, presumed and alleged parents do not have "the status of a biological or adoptive parent . . . included in the statutory definition of Indian child." (*In re C.A.* (2018) 24 Cal.App.5th 511, 520-521; see also 25 U.S.C. § 1903(9) [defining "parent" under ICWA as " 'any biological parent or parents of an Indian child or any Indian person who has lawfully adopted an Indian child, including adoptions under tribal law or custom. It does not include the unwed father where paternity has not been acknowledged or established.' "].) We therefore discuss the presumed mother and alleged fathers only as needed.

Mother's last name but whose relationship to L.L. was not specified.[4] The mailed letters are not contained in the record on appeal. There is no indication, however, that the letters inquired about L.L.'s possible Native American ancestry. The Agency located alleged father, A.C., who appeared at the February 2021 jurisdiction and disposition hearing. There, the juvenile court asked A.C., "Are you indicating that you have any Native American heritage?" A.C. responded, "No." The court noted that Mother had denied Native American ancestry and found that ICWA did not apply.[5]

At the contested section 366.26 hearing in June 2022, the court terminated Mother's parental rights. Mother appealed from that order, challenging only the court's ICWA finding, made at the time of the jurisdiction and disposition hearing.[6]

---

[4]    In her opening brief, Mother appears to suggest that the relatives who share her last name are all "maternal relatives." However, the Agency's report is silent as to their actual relationship to L.L. and Mother.

[5]    In its April 2021 addendum report, the Agency reported that A.C.'s paternity results indicated that he was not L.L.'s biological father. In addition, Mother later identified two other alleged fathers, but the record reflects that the Agency was unable to locate either of them despite reasonable search efforts. This was not a violation of section 224.2(b). (See, e.g., *In re Levi U.* (2000) 78 Cal.App.4th 191, 199 [ICWA does not require the Agency or court to "cast about" for investigative leads].)

[6]    Mother did not appeal from the juvenile court's February 2021 jurisdictional and dispositional order in which the court expressly found that ICWA did not apply. Ordinarily, "California follows a 'one shot' rule under which, if an order is appealable, appeal must be taken or the right to appellate review is forfeited." (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 761, fn.8.) However, because the duty of inquiry under ICWA is a *continuing* one, the one-shot rule does not apply here. (See § 224.2, subd. (a); *In re Isaiah W.* (2016) 1 Cal.5th 1, 6 (*Isaiah W.*) ["Because ICWA imposes on the juvenile court a continuing duty to inquire whether the child is an Indian

4

# DISCUSSION

## A.    *ICWA Inquiry Duties, Generally*

In dependency proceedings, both the juvenile court and Agency have an "affirmative and continuing duty to inquire" whether a child "is or may be an Indian child." (§ 224.2, subd. (a).)  "This continuing duty can be divided into three phases:  the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*In re D.F.* (2020) 55 Cal.App.5th 558, 566 (*D.F.*).)  The Agency's initial inquiry duty, which is at issue in this appeal, includes "asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).)[7]  ICWA defines " 'extended family member' " by "the law or custom of the Indian child's tribe" or, absent such law or custom, as "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); § 224.1, subd. (c) [" 'extended family member' . . . defined as provided in [§] 1903" of ICWA].)

---

child, we hold that the parent may challenge a finding of ICWA's inapplicability in an appeal from the subsequent [termination of parental rights] order, even if she did not raise such challenge in an appeal from the initial [jurisdictional and dispositional] order."].)

[7]    If the initial inquiry reveals a "reason to believe" that the child is an Indian child, then further inquiry into whether there is a "reason to know" that the child is an Indian child is required. (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052 (*D.S.*).)  If there is "reason to know" that a child is an Indian child (§ 224.2, subd. (d)), then formal notice must be sent to the interested tribe(s) (§ 224.3). (*D.S.*, *supra*, at p. 1052.)

A juvenile court finding that ICWA is inapplicable generally implies that the Agency and court have fulfilled their duty to inquire. (See *In re Austin J.* (2020) 47 Cal.App.5th 870, 885 (*Austin J.*) [a finding that "ICWA does not apply" implies social workers and court "did not know or have a reason to know the children were Indian children and that social workers had fulfilled their duty of inquiry"].) (*Id.* at p. 885.) We review ICWA findings for substantial evidence, but "where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied." (*D.S.*, *supra*, 46 Cal.App.5th at p. 1051.)

B. *Initial Inquiry*

Mother asserts, and the Agency concedes, that there is not substantial evidence to support the juvenile court's finding that the Agency complied with its initial inquiry obligations under ICWA. She first complains that the Agency failed to interview maternal grandmother, maternal uncle, and maternal aunt regarding L.L.'s possible Indian heritage. We agree. Because grandmothers, uncles, and aunts qualify as "extended family members" under ICWA, the Agency should have conducted ICWA inquiries of them. (See 25 U.S.C. § 1903(2); Welf. & Inst. Code, § 224.1, subd. (c).)

Mother next complains that the Agency failed to conduct ICWA inquiries via letter with "at least nine maternal relatives" to whom the Agency sent relative notification letters. As the Agency alleges, however, Mother has not identified these purported relatives by name nor has she explained how they are related to L.L. Aside from maternal uncle and maternal grandmother—who are denoted in the report as "maternal uncle" and "grandmother"—we are unable to determine on this record which of the 17 individuals to whom the Agency mailed letters are maternal relatives or whether any of these individuals qualify as "extended family members" under

6

ICWA. As discussed *ante*, the Agency should have conducted ICWA inquiries with maternal grandmother, maternal uncle, and maternal aunt. On this record, however, we cannot say that the Agency was statutorily required to conduct such inquiries by letter with the other "potential relatives" identified in the Agency's report.[8]

Finally, Mother complains that the juvenile court made its ICWA finding without ordering Mother to complete a *Parental Notification of Indian Status* form ICWA-020, as required by California Rules of Court, rule 5.481(a)(2)(C). The Agency appears to concede, and we agree, that this is error. (Cal. Rules of Court, rule 5.481(a)(2)(C).)

Because the Agency and court's initial ICWA inquiry was deficient, we conclude that substantial evidence does not support the juvenile court's finding that ICWA did not apply.

C.  *Prejudicial Error*

The parties dispute whether the error is harmless. The Courts of Appeal have applied varying analytical frameworks to evaluate whether errors in the ICWA initial inquiry are prejudicial. We need not address these various approaches because this division has adopted the approach articulated in *Benjamin M.*, *supra*, 70 Cal.App.5th 735. (*In re Y.M.* (2022) 82 Cal.App.5th 901, 916.)

Under this approach, "a court must reverse where the record demonstrates that the agency has not only failed in its duty of initial inquiry,

---

[8]    The Agency's duty to inquire about L.L.'s possible Native American ancestry is an affirmative and continuing one. (See § 224.2, subd. (a).) Thus, if any of these individuals' responses to the Agency's letters indicate that they are, in fact, "extended family members" under ICWA or that they otherwise have an interest in L.L., the Agency must conduct ICWA inquiries accordingly. (See 25 U.S.C. § 1903(2); Welf. & Inst. Code, § 224.1, subd. (c); Welf. & Inst. Code, § 224.2, subd. (b).)

7

but where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Benjamin M., supra*, 70 Cal.App.5th at p. 744.) This "standard does not require 'proof of an actual outcome (that the parent may actually have Indian heritage).' [Citation.] The missing information need only be relevant to the ICWA inquiry, 'whatever the outcome will be.' " (*In re Ricky R.* (2022) 82 Cal.App.5th 671, 679; *id.* at p. 680 [applying *Benjamin M.* standard and finding reversible error in the initial inquiry where Agency "asked the parents about Indian ancestry" but "failed to ask extended family members about it"].)

On this record, we cannot say that the Agency and court's failure to comply with their initial inquiry obligations was harmless. Extended family members were readily available and their responses would likely have borne meaningfully with respect to whether L.L. is an Indian child, regardless of the outcome of the inquiry. (*Benjamin M., supra*, 70 Cal.App.5th at p. 744.) Moreover, the fact that Mother denied any Native American ancestry does not relieve the Agency of its duty to conduct ICWA inquiries with all readily ascertainable extended family members or the court of its duty to ensure that proper inquiry is made. (*In re Y.W.* (2021) 70 Cal.App.5th 542, 554.) A contrary rule would "ignore[ ] the reality that parents may not know their possible relationship with or connection to an Indian tribe." (*Ibid.*; *In re S.R.* (2021) 64 Cal.App.5th 303, 314 ["the children's parents apparently had no idea of their family's connection to the . . . tribe . . . , even though the children's great-grandmother was a member"]; see also *In re T.G.* (2020) 58 Cal.App.5th 275, 295 [noting that ICWA's "expansive" duty of inquiry "is premised on the commonsense understanding that, over time, Indian families, particularly those living in major urban centers . . . , may well have

lost the ability to convey accurate information regarding their tribal status"]; *In re Rylei S.* (2022) 81 Cal.App.5th 309, 321–322 [same].) Thus, we conditionally reverse the order terminating Mother's parental rights with a limited remand for the Agency and juvenile court to comply with ICWA and section 224.2.

Given the importance of expediency and the need for finality, we encourage the parties to stipulate to immediate issuance of the remittitur in this case. (Cal. Rules of Court, rule 8.272(c)(1).)

DISPOSITION

The juvenile court's order terminating parental rights is conditionally reversed. The matter is remanded to the juvenile court with directions to comply with the inquiry provisions of ICWA and section 224.2 (and, if applicable, the notice provisions under section 224.3). If, after completing its inquiry, neither the Agency nor the juvenile court has reason to believe or reason to know that L.L. is an Indian child, the order terminating parental rights shall be reinstated. If the Agency or the juvenile court has reason to believe or reason to know that L.L. is an Indian child, the juvenile court shall proceed accordingly.

AARON, J.

WE CONCUR:


McCONNELL, P. J.


HUFFMAN, J.